UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND, On Behalf of Himself and All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>    vs.<br><br>ALLSCRIPTS-MISYS HEALTHCARE SOLUTIONS, INC., GLEN E. TULLMAN and WILLIAM J. DAVIS,<br><br>                  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No.  09-4726<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **DEMAND FOR JURY TRIAL**<br>)<br>)<br>) |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**
**NATURE OF THE ACTION**

1.     This is a securities class action on behalf of purchasers of Allscripts-Misys Healthcare Solutions, Inc. (formerly known as Allscripts Healthcare Solutions, Inc.) ("Allscripts-Misys," or "Allscripts" or the "Company") common stock during the period from May 8, 2007 to February 13, 2008 (the "Class Period"), against Allscripts and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "Exhange Act").

2.     Defendant Allscripts develops and sells software applications to healthcare organizations. According to the Company, more than 150,000 physicians, 700 hospitals and nearly 7,000 post-acute and homecare organizations utilize Allscripts software applications. Allscripts products include electronic health records ("EHR") systems, electronic prescribing, revenue cycle

management, practice management, document management, medication services, hospital care management, emergency department information systems and homecare automation.

3.    Allscripts-Misys was formed in October, 2008 by the merger of a subsidiary of Allscripts with Misys Healthcare Systems, LLC, a fully-owned division of London-based Misys plc (the "Merger").

4.    During May 2007, the Company went "live" with the newest version of its EHR clinical software, Touchworks, version 11 ("V-11"). V-11 originally scheduled for release in late 2006, was delayed for several months, according to Defendants (defined below), due to additional verification of the software at several pilot sites. During 2007, Defendants guided analysts and investors to expect the Company to realize $300 million in revenues and earn up to $0.44 per share, based in material part on revenues and profits generated from sales of V-11. Just prior to the May V-11 release, Defendants, citing greater "visibility" on several large potential V-11 sales, increased Allscripts sales backlog or "bookings" for clinical software by an additional $20 million, to in excess of $230 million.

5.    Unbeknownst to shareholders, by the start of the Class Period, the Company had overextended its resources and would not be able to complete the installations of V-11 that it currently had underway. As detailed herein, contrary to Defendants' affirmative statements, Allscripts lacked the physical and manpower resources necessary to complete its existing contractual V-11 sales obligations and would need to defer all or most of the V-11 revenue underlying the Company's 2007 sales and earning guidance. These undisclosed adverse facts caused the Company to miss its revenue forecasts by at least $18 million or about 9%.

6.    The truth began to emerge on November 8, 2007, with the Company's release of its third quarter 2007 financial results. Allscripts reported revenues and earnings significantly below its

recently confirmed 2007 earnings guidance.  The Company missed Wall Street consensus earnings by 29% and lowered its 2007 revenue guidance by 4% to $288 million.

7.      Following these announcements the price of Allscripts common stock fell $4.32 or 19% closing at $18.68 per share on November 9, 2007.  However, Defendants continued to mislead investors by failing to disclose continuing delays in V-11 sales and installations.

8.      Then, on February 13, 2008, Allscripts released its actual 2007 financial results, reporting 2007 revenue of $281.9 million or $18 million below Defendants' $300 million guidance confirmed in August 2007 and $5 million short of Defendants' November earnings guidance revision.  During a conference call with investors that same day, Defendants finally admitted to V-11 installation delays that were likely to negatively impact sales and earnings well into 2008.

9.      In response to those announcements the price of Allscripts common shares fell an additional $4.12 per share closing at $11.27 on February 14, 2008.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Jurisdiction is conferred by Section 27 of the Exchange Act.

11.     Venue is proper pursuant to Section 27 of the Exchange Act as Allscripts' and/or the Individual Defendants (defined below) conduct business in and the wrongful conduct took place in this District, and the Company's principal executive offices are in Chicago, Illinois, where the day-to-day operations of the Company are directed and managed.

## PARTIES

12.     Plaintiff Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund purchased Allscripts common stock as detailed in the attached Certification, which is incorporated herein by reference and was damaged thereby.

13.     Defendant Allscripts develops and sells software applications to the heathcare industry.  The Company's headquarters is located at 222 Merchandise Mart Plaza, Suite 2024, Chicago, Illinois.  As of February 15, 2008, the Company had over 56.9 million shares issued and outstanding that trade on the New York Stock Exchange under the ticker symbol "MDRX."

14.     Defendant Glen E. Tullman ("Tullman") is, and was at all relevant times, Chief Executive Officer ("CEO") of Allscripts and Chairman of the Board through the effective date of the Merger.

15.     Defendant William J. Davis ("Davis") was, at all relevant times, Chief Financial Officer ("CFO") of Allscripts.

16.     The individuals named as Defendants in ¶¶14-15 are referred to herein as the "Individual Defendants."  They are liable for the false and misleading statements set forth at ¶¶19-24.

## DEFENDANTS' SCIENTER

17.     Defendants are Allscripts, its CEO and former Chairman and its CFO.  Both of these executives, by virtue of their high-level positions with Allscripts, directly participated in the management of Allscripts, were directly involved in the day-to-day operations of Allscripts at the highest levels and were privy to confidential proprietary information concerning Allscripts and its business, operations, products, growth, financial statements and financial condition and were aware of, or deliberately disregarded, that the false and misleading statements made by and regarding the Company were still alive in the market and causing the Company's stock to trade at inflated prices. Because of their managerial positions with Allscripts, each had access to the adverse undisclosed information about Allscripts business, financial condition and prospects and knew (or deliberately disregarded) that the adverse facts alleged herein rendered the positive representations made during the Class Period materially false and misleading.

- 4 -

18.     Each Individual Defendant was personally familiar with the quality of the Company's

projected earnings and implementation delays and sales slippage that Allscripts incurred in the

development and rollout of Touchworks because they monitored Allscripts "bookings" and were

closely monitoring the progress of Allscripts's Touchworks's implementation schedules via reports

from Allscripts operations, sales and finance departments, which were generated and provided to

them on a regular basis.   The reports summarized the Company's sales pipeline, project

implementation schedules and revenue recognition based on project completions.  As a result of their

monitoring, each of the Individual Defendants knew, or recklessly disregarded, that Allscripts would

be unable to meet its own projected sales targets and financial results.

## MATERIALLY FALSE AND MISLEADING STATEMENTS
## ISSUED DURING THE CLASS PERIOD

19.     On May 8, 2007, Allscripts issued a press release announcing its financial results for

the first quarter of fiscal 2007 ended March 31, 2007, entitled "Revenue From Software and Related

Services Up 81% Over Prior Year."  The release stated, in relevant part, as follows:

> Total revenue for the three months ended March 31, 2007 was $65.0 million,
> compared to $42.2 million for the same period last year. ***Revenue from software and
> related services for the three months ended March 31, 2007 was $51.2 million,
> compared to $28.3 million for the same period last year, increasing by
> approximately 81.0%***.
>
> Gross margin percentage was 49.6% for the first quarter of 2007, compared to 47.7%
> during the first quarter of 2006.
>
> Net income for the three-months ended March 31, 2007 was $4.5 million, or $0.08
> per diluted share, compared to net income of $1.3 million, or $0.03 per diluted share,
> for the same period last year.

*        *        *

Defendant Tullman commented on Allscripts' seemingly postive results stating, in pertinent part, as

follows:

Allscripts continued to demonstrate our leadership in the most important segments of the healthcare market, helping our clients to streamline and revitalize their clinical and financial operations and transform healthcare across their communities. ***Our revenue growth, visibility to sales opportunities and solid bottom-line performance give us confidence in our ability to deliver during the remainder of 2007***.[1]

20.     During a conference call with analysts that same day, Defendant Tullman announced Allscripts's intention to raise "bookings" guidance for the remainder of fiscal 2007. As detailed by Defendant Davis, the Company stated its "clinical bookings" guidance would "exceed" $230 million, a $20 million, plus increase over the previous guidance of $210 million and a 40% increase compared to 2006. The Company's fiscal 2007 revenues and earnings guidance remained unchanged at $300 million and $0.42 to $0.44 per share, respectively. During the call, Defendant Tullman also stated that V-11, after a release delay of "four to six weeks" would go into "controlled release" on May 21, 2007. Davis further stated that approximately $1 million in deferred Touchworks V-11 revenue stemming from the release delay would be recognized during the second quarter ending June 2007.

21.     On August 7, 2007, Allscripts issued a press release announcing its financial results for the second quarter of fiscal 2007 ended June 30, 2007, entitled, "Company Posts Record Revenue and Earnings Per Share." The release stated, in relevant part, as follows:

Total revenue for the three months ended June 30, 2007 was a record $70.0 million, compared to $60.0 million for the same period last year. ***Revenue from software and related services for the three months ended June 30, 2007 was $54.7 million, compared to $46.7 million for the same period last year, increasing by 17%***. Gross margin percentage was 51% for the second quarter of 2007, compared to 52% during the second quarter of 2006.

Net income for the three months ended June 30, 2007 was $6.0 million, or $0.10 per diluted share, compared to net income of $2.8 million, or $0.05 per diluted share, for the same period last year. Non-GAAP adjusted earnings for the three months ended

---

[1]     All emphasis is added unless otherwise noted.

June 30, 2007 were $7.9 million, or $0.13 per diluted share—a new record for the Company—compared to non-GAAP adjusted earnings of $5.1 million, or $0.09 per diluted share for the same period last year. Non-GAAP adjusted earnings for the three months ended June 30, 2007 and 2006 are comprised of net income giving effect to the add-back of acquisition-related amortization of $1.5 million and $2.0 million, respectively, or $0.02 and $0.04 per diluted share, respectively, net of tax, and total stock-based compensation expense of $0.4 million and $0.3 million, respectively, or $0.01 and $0.00 per diluted share, respectively, net of tax.

Defendant Tullman provided additional comments on Allscripts results and operations stating, in

pertinent part, as follows:

> Allscripts delivered record results in the second quarter and substantial progress towards our goal of making 2007 our strongest year ever. Having invested in new technology and hired aggressively for future growth, we are in position to capitalize on the significant market opportunity during the second half of the year, which is traditionally the industry's strongest sales period. We have a clear vision for leveraging software, connectivity and information to transform healthcare, and we continue to demonstrate our ability to deliver on that vision.

22.     During a conference call with analysts that same day, Defendant Davis confirmed

Allscripts' previously issued fiscal 2007 guidance citing "increased confidence in our ability to close

several enterprise deals this year. As such, we continue to expect our total clinical bookings for the

year to be in excess of $230 million." Defendants further confirmed the V-11 rollout was going

"very well," the transcript of the call stated, in pertinent part, as follows:

Defendants Davis:

> [T]he perspective on our outlook for the second half of the year is in keeping with our outlook on the bookings in that we have the benefit, one of nice things about Allscripts model we draw very large percentage of our revenues from our reported backlog. And so we have clear visibility as to where we expect our revenue to come from. It is a function of increased productivity in terms of the implementation resources on the Touchworks side but it's also in recognition that we have identified specific incremental license opportunities with existing customers and the like. I would think about the relative sequencing, working off the $70 million base. We tend to think about it in that 9 to 12% sequential range. And again, feel that we have sufficient backlog and sales opportunity to convert that to deliver on the $300 million for the year.

Defendant Tullman:

We did in fact activate a number of [Touchworks V-11] clients in the quarter. . . .
We are looking at a few thousand users probably by the end of August. That rollout
is going very well.

23.    During the conference call, Davis also announced that "in the best interest of all of

our investors" Allscripts was implementing "a formal quiet period starting at the end of the third

quarter. Such quiet period will start on the last day of the quarter and will continue through the day

we announce our quarterly results."    The reason for this unusual statement became clear on

November 8th.

24.    The statements set forth at ¶¶19-23 were affirmatively false and misleading in failing

to disclose the following facts, which were then existing, known or recklessly disregarded by

Defendants to be false, and necessary to be disclosed to make Defendants' statements not

misleading, including the following:

(a)    that Allscripts lacked the necessary resources to install V-11 software at
customer sites;

(b)    that Allscripts had no historical basis to estimate the completion of V-11 or
the impact V-11 sales might have on the Company's 2007 revenues and earnings;

(c)    that the complexity of V-11 had materially and adversely lengthened the sales
cycle and revenue recognition cycle for the Company's V-11 sales contracts;

(d)    that Allscripts was currently experiencing adverse and continuing delays in
the installation of V-11 software systems; and

(e)    that based on the foregoing, Defendants had no reasonable basis for their
statements and opinions concerning Allscripts' current and future financial performance and
projections.

25.     On or about November 8, 2007, after the close of the market, Allscripts reported third

quarter 2007 earnings that were below Wall Street estimates. Allscripts also lowered its revenue

guidance for the remainder of fiscal 2007.  The Company reported "non-GAAP" earnings of $0.11

per share, 26% below Wall Street consensus earnings of $0.15 per share and lowered its 2007

revenues by more than 4% from $300 million to a range of $288 to $286 million.  The press release

stated, in pertinent part, as follows:

> Total revenue for the three months ended September 30, 2007 was $73.4 million, a
> new record for the company, compared to $62.2 million for the same period last year.
> Revenue from software and related services for the three months ended September
> 30, 2007 was $59.0 million, compared to $49.5 million for the same period last year,
> increasing by 19.1%.
>
> Gross margin percentage was 50.1% for the third quarter of 2007, compared to
> 49.1% during the third quarter of 2006.
>
> Net income for the three months ended September 30, 2007 was $4.1 million, or
> $0.07 per diluted share, compared to net income of $3.3 million, or $0.06 per diluted
> share, for the same period last year.
>
> *        *        *
>
> Non-GAAP adjusted earnings for the three months ended September 30, 2007 were
> $6.7 million, or $0.11 per diluted share, compared to non-GAAP adjusted earnings of
> $5.5 million, or $0.10 per diluted share for the same period last year.
>
> *        *        *
>
> Allscripts has updated its revenue target for the full year 2007 to a range of $286
> million to $288 million. . . .  The Company also updated its GAAP earnings per
> diluted share outlook to a range of $0.34 to $0.35 . . . and its Non-GAAP adjusted
> earnings per diluted share outlook to a range of $0.48 to $0.49.

26.     Following this announcement the price of Allscripts common shares fell $6.62 per

share in after market trading, reaching a low of $16.26 on November 9, 2007, before closing at

$18.68 per share, a decline of nearly 19% from the previous day's close on volume of more than 11

million shares.  Defendants, however, continued to conceal the true information about V-11 sales

problems.

27.     During a conference call with analysts that same day Defendant Davis addressed the

third quarter revenue shortfall expressing confidence in meeting or exceeding the Company's 2007

revised guidance.  The transcript of the call stated, in pertinent part, as follows:

Davis:

Turning now to the balance of 2007. As I mentioned at the beginning, we are seeing
some near-term impact on revenue associated with the ramping up of resources on
some of our largest clients. While we believe it's possible to mitigate that exposure
with add-on license sales in the fourth quarter, we believe it's appropriate to
recalibrate market expectations for the full year. We now expect total revenue for the
year to be in the range of $286 million to $288 million, a 25% increase over last year,
and GAAP earnings per share of $0.34 to $0.35 per diluted share, a 55% increase
over last year. The 2007 GAAP EPS guidance contemplates $0.10 per share tax
effected of deal related amortization and $0.04 to $0.05 per share of stock-based
compensation also net of tax.

It's important to note that we remain confidence in Allscripts positive outlook. So as
we look into 2008, we continue to see a business that is positioned to grow revenue
approximately 20% to 25%.

28.     Then, on February 13, 2008, Allscripts reported its fiscal year 2007 financial results.

Total revenue for the year ended December 31, 2007 was $281.9 million, compared to $228.0

million for 2006.  Net income for the year ended December 31, 2007 was $20.6 million, or $0.35 per

diluted share, compared to net income of $11.9 million, or $0.22 per diluted share for 2006. Non-

GAAP adjusted earnings for the year ended December 31, 2007 was $29.5 million, or $0.49 per

diluted share, compared to adjusted earnings of $19.7 million, or $0.37 per diluted share, for the

same period last year.

29.     During a conference call with analysts that same day, Defendants admitted that

Allscripts had no historical basis for estimating deployment schedules for V-11 or the revenue that

the Company could plan to recognize during 2007.  The transcript stated, in pertinent part, as

follows:

[Analyst]: A couple questions on Version 11. What's the average Version 11 implementation time right now? And then what's the plan to get it down and where do you see it settling?

BILL DAVIS: *What I would say is we don't quite yet have an average and part of the challenge, we have Version 11 across the 30 or so clients that we're implementing it. Some are new, some are larger, some are smaller. So, I'm not sure that we have an average time per say, other than saying that to date, it's been larger*, and part of that challenge has been that we may have Version 11 working perfectly at one site and we take it to a different sized site. And there are different training requirements, there are different implementation requirements and they may be using it or they may be using it in different specialties in a different fashion because of the flexibility. That's what's made it complex. As I mentioned, we have a plan which includes shifting a significant number of resources across the company to focus on both software enhancements and other changes that have been requested by the initial clients, that's number one. Number two, we brought in some process expertise, some black belts who are helping us focus, teams on how we're going to deploy this in a more standardized fashion which makes it easier for our clients, and also obviously more cost effective for us to deploy. Now, that said, we are making progress on it's moving in the right direction. I mentioned 11.1, which is coming out in Q2, and that will address many of these issues, so we feel very confident that while we have an issue, that we also are working the issue very aggressively, and that we've got it to where it's under control.

30.     On February 14, 2008, an article published by the Associated Press Financial Wire summarized the financial markets reaction to the Company's 2007 revenue shortfall.  The article stated, in pertinent part, as follows:

Shares of AllScripts Healthcare Solutions Inc. plunged in premarket trading Thursday, and were on pace to open near a three-year low, after the clinical software provider's fourth-quarter results disappointed investors.

The Chicago company's adjusted profit matched analyst estimates, but its revenue fell short of expectations. Analysts pinned the miss on problems with the rollout of AllScripts' TouchWorks v11 application, and large contracts that were not completed by the end of the quarter.

The stock sank $3.29, or 21.4 percent, to $12.10 in premarket trading. Shares have traded between $14.32 and $29.31 in the last year, and finished at $15.39 Wednesday.

Shares last traded under $12 in February 2005.

Deutsche Bank analyst Ross Muken pointed to a number of problems, including the contract delays, lower profit margins and disappointing hardware sales, in downgrading the stock to "Hold" from "Buy."

He added that the difficulties in the debut of TouchWorks v11 could hurt sales over the next 6 months.

"The decrease in margins was due to costs related to the v11 rollout, which continues to have deployment issues," he said. "While the enterprise-wide deals have a strong impact on both revenue and bookings, the continued missteps in executing on these deals is somewhat unnerving."

Muken cut his target price to $15.50 per share from $27, and lowered his 2008 and 2009 profit estimates. He added that AllScripts may be forced to make less profitable deals in the future if key customers for electronic medical records reduce orders.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Asscripts' common stock on the open market during the Class Period (the "Class"). Excluded from the Class are defendants, directors and officers of Allscripts and their families and affiliates.

32.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. During the Class Period, Allscripts had over 56.9 million shares of stock outstanding.

33.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members include:

       (a)     whether the Exchange Act was violated by Defendants;

       (b)     whether Defendants omitted and/or misrepresented material facts;

       (c)     whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether Defendants knew or recklessly disregarded that their statements were false and misleading; and

(e)     the extent of damage sustained by Class members and the appropriate measure of damages.

## LOSS CAUSATION/ECONOMIC HARM

34.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Allscripts' stock price and operated as a fraud or deceit on Class Period purchasers of Allscripts' stock by misrepresenting the Company's business success and future business prospects. When Defendants' falsehoods, misrepresentations and omissions were disclosed and became apparent, Allscripts' stock price fell precipitously as the prior artificial inflation came out of the price of the stock. As a result of their purchases of Allscripts' stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

35.     Defendants' false and misleading statements and omissions had the intended effect, and caused Allscripts' stock to trade at artificially inflated levels throughout the Class Period.

36.     The declines in Allscripts' stock price alleged herein were a direct result of the nature and extent of Defendants' fraud being partially revealed to investors and the market. The timing and magnitude of Allscripts' stock price declines negate any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and other members of the Class was a direct result of Defendants' fraudulent scheme to artificially inflate Allscripts' stock price and the subsequent significant decline in the value of Allscripts' stock when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

37.    Plaintiff repeats and reallages each and every allegation contained above as if fully set forth herein.

38.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

    (a)    employed devices, schemes and artifices to defraud;

    (b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Allscripts' publicly traded securities during the Class Period.

40.    Plaintiff and the Class have suffered damages in that, in reliance upon the integrity of the market, they paid artificially inflated prices for Allscripts' publicly traded securities. Plaintiff and the Class would not have purchased Allscripts' publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

41.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Allscripts' publicly traded securities during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act
### Against All Defendants

42.     Plaintiff repeats and reallages each and every allegation contained above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Allscripts' within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of Allscripts, and their ownership of Allscripts' stock, the Individual Defendants had the power and authority to cause Allscripts to engage in the wrongful conduct complained of herein. Allscripts controlled the Individual Defendants and all of its employees.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 4, 2009                    PLAINTIFF


                                         By: s/Marvin A. Miller
                                         Marvin Miller
                                         Lori A. Fanning
                                         MILLER LAW LLC
                                         115 South LaSalle Street, Suite 2910
                                         Chicago, IL 60603
                                         Telephone:   312/332-3400
                                         312/676-2676  (fax)

                                         Samuel H. Rudman
                                         David A. Rosenfeld
                                         COUGHLIN STOIA GELLER RUDMAN &
                                         ROBBINS LLP
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

                                         Howard S. Susskind
                                         SUGARMAN & SUSSKIND
                                         100 Miracle Mile, Suite 300
                                         Coral Gables, FL  33134
                                         Telephone:  305/529-2801
                                         305/447-8115 (fax)

                                         Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5.    (a)    Plaintiff has been appointed to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Greenfield Online, Inc., et al.,* No. 3:07-cv-01118-VLB (D. Conn.)

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc., et al.,* No. 1:08-cv-04063-JGK (S.D.N.Y.)

(b)    Plaintiff is seeking to serve as a representative party for a class in the following actions filed under the federal securities laws:

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v Kenexa Corporation, et al.,* No. 2:09-cv-02642-JS (E.D. Pa.)

(c)    Plaintiff initially sought to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

*Textor v. NovaGold Resources Inc., et al.,* No. 1:08-cv-07041-DLC (S.D.N.Y.)

*Waterford Township General Employees Retirement System v. BankUnited Financial Corporation, et al.,* No. 08-Civ-22572 (S.D. Fla.)

ALLSCRIPTS

6.      The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of ___July___, 2009.

PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND

By: _____

Its: _____

- 2 -

ALLSCRIPTS

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 01/09/2008 | 1,000 | $16.12 |
| 01/09/2008 | 2,500 | $16.00 |

Sales

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 05/24/2007 | 2,000 | $24.43 |
| 06/01/2007 | 1,000 | $24.98 |
| 11/05/2007 | 400 | $24.89 |
| 11/06/2007 | 100 | $24.66 |
| 02/07/2008 | 1,500 | $15.27 |

*Opening position of 7,000 shares.