## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND, On Behalf of Itself and All Others Similarly Situated, et al., Plaintiffs, | ) ) ) ) ) ) | No. 1:09-cv-04726 Judge Ruben Castillo |
| vs. | ) ) | |
| ALLSCRIPTS-MISYS HEALTHCARE SOLUTIONS, INC., et al., Defendants. | ) ) ) ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS
## THE AMENDED COMPLAINT

Walter C. Carlson
James W. Ducayet
Victor D. Quintanilla
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

ATTORNEYS FOR DEFENDANTS

Dated:  February 17, 2010

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................ii-v

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.      PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT DEFENDANTS MADE
ANY FALSE STATEMENTS........................................................................................ 4

      A.     The Amended Complaint Is Premised On Information And Belief, But Does Not
Identify The Basis On Which Those Beliefs Are Formed. .................................... 4

      B.     Generalized Statements Of Optimism And Puffery Are Immaterial As A Matter of
Law.................................................................................................................... 8

      C.     The Challenged Forward-Looking Statements Are Protected By The Reform Act's
Safe Harbor...................................................................................................... 10

      D.     Plaintiffs Have Not Adequately Pleaded The Falsity Of The Challenged Present-
Tense Statements About V-11............................................................................ 12

II.     PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO A STRONG INFERENCE
OF *SCIENTER*. ........................................................................................................ 15

      A.     Plaintiffs Do Not Allege A Motive To Commit Fraud. ....................................... 16

      B.     Plaintiffs Fail To Allege A Cogent Or Compelling Inference That The Defendants
Acted With *Scienter*. ....................................................................................... 18

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABC Arbitrage v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ....................................................................................6

*Adams v. Kinder-Morgan, Inc.*
  340 F.3d 1083 (10th Cir. 2003) ................................................................................5

*Anderson v. Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001) .....................................................................8-9

*Asher v. Baxter*,
  377 F.3d 727 (7th Cir. 2004) ..................................................................................11

*Caiafa v. Sea Containers Ltd.*,
  525 F. Supp. 2d 398 (S.D.N.Y. 2007) .....................................................................15

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ..............................................................................5, 6, 7

*Clark v. Comcast Corp.*,
  582 F. Supp. 2d 692 (E.D. Pa. 2008) .....................................................................5, 8

*Davis v. SPSS, Inc.*,
  431 F. Supp. 2d 823 (N.D. Ill. 2006) .....................................................................5, 8

*Desai v. Gen. Growth Props.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009) ....................................................6, 10, 11, 12

*ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ...................................................................................13

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
  -- F.3d --, 2010 WL 154519 (11th Cir. Jan. 19, 2010) ...........................................12

*Friedman v. Rayovac Corp.*,
  295 F. Supp. 2d 957 (W.D. Wis. 2003) ..................................................................13

*Geinko v. Padda*,
  No. 00 C 5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ...................................15

*Gosselin v. First Trust Advisors LP*,
  No. 08 C 5213, 2009 U.S. Dist. LEXIS 117737 (N.D. Ill. Dec. 17, 2009) ..............6

*Higginbotham v. Baxter, Intern.*,
    495 F.3d 753 (7th Cir. 2007) ....................................................................................6, 16, 17

*Huddleston v. Herman & MacLean*,
    640 F.2d 534 (5th Cir. 1981) ..................................................................................................12

*In FirstEnergy Corp. Sec. Litig.*,
    316 F. Supp.2d 581 (N.D. Ohio 2004)....................................................................................12

*In re Autodesk, Inc. Sec. Litig.*,
    132 F. Supp. 2d 833 (N.D. Cal. 2000) .....................................................................................8

*In re Career Educ. Corp. Sec. Litig.*,
    No. 03 C 8884, 2006 WL 999988 (N.D. Ill. Mar. 28, 2006) ....................................................5

*In re Cephalon Sec. Litig.*,
    1997 U.S. Dist. LEXIS 13840 (E.D. Pa. Aug. 29, 1997)..........................................................6

*In re Kindred Healthcare, Inc. Sec. Litig.*,
    299 F. Supp.2d 724 (W.D. Ky. 2004) .....................................................................................12

*In re JP Morgan Chase & Co. Sec. Litig.*,
    No. 06 C 4674, 2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 17, 2007) .................................6

*In re Lattice Semiconductor Corp. Sec. Litig.*,
    No. CV04-1255-AA, 2006 U.S. Dist. LEXIS 262 (D. Or. Jan. 3, 2006) .................................10

*In re Midway Games, Inc. Sec. Litig.*,
    332 F. Supp. 2d 1152 (N.D. Ill. 2004) ...............................................................................8, 12

*In re Next Level Sys. Sec. Litig.*,
    No. 97 C 7362, 1999 U.S. Dist. LEXIS 5653 (N.D. Ill. Mar. 31, 1999) .................................12

*In re Northfield Labs., Inc. Sec. Litig.*,
    No. 06 C 1493, 2008 U.S. Dist. LEXIS 76804 (N.D. Ill. Sept. 23, 2008)................................6

*In re NVE Corp. Sec. Litig.*,
    551 F. Supp. 2d 871 (D. Minn. 2007)....................................................................................10

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001).......................................................................................................6

*In re Ulta Salon, Cosmetics & Fragrance, Inc.*,
    604 F. Supp. 2d 1188 (N.D. Ill. 2009) ....................................................................................6

*In re Westell Techs., Inc. Sec. Litig.*,
    No. 00 C 6735, 2001 U.S. Dist. Lexis 17867 (N.D. Ill. Oct. 30, 2001).....................................9

*In re World Access Sec. Litig.*,
    119 F. Supp. 2d 1348 (N.D. Ga. 2000) ...................................................................10

*In re XM Satellite Radio Holding Sec. Litig.*,
    479 F. Supp. 2d 165 (D.D.C. 2007) .......................................................................10

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.*,
    537 F.3d 527 (5th Cir. 2008) .................................................................................17

*Konkol v. Diebold*, 590 F.3d 390 (6th Cir. 2009) .................................................15, 16

*Lindelow v. Hill*,
    No. 00 C 3727, 2001 U.S. Dist. Lexis. 10301 (N.D. Ill. Jul. 20, 2001)...................10

*Makor Issues v. Tellabs*,
    437 F.3d 588 (7th Cir. 2006) ("*Tellabs I*") ........................................5, 8, 9, 10, 11

*Makor Issues v. Tellabs*,
    513 F.3d 702 (7th Cir. 2008) ("*Tellabs III*") ...................................................16, 19

*Miller v. Champion Enters. Inc.*,
    346 F.3d 660 (6th Cir. 2003) .................................................................................12

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)................................................................................5, 6

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) .........................................................................2, 17, 20

*Raab v. General Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) .................................................................................8, 9

*Rombach v. Chang*,
    355 F.3d 164,173 (2d Cir. 2004)............................................................................12

*Stavros v. Exelon Corp.*,
    266 F. Supp. 2d 833 (N.D. Ill. 2003) (Castillo, J.) ...................................10, 12, 20

*Teachers Retirement System of Louisiana v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) ..................................................................................6

*Tellabs v. Makor Issues*,
    551 U.S. 308 (2007) ("*Tellabs II*") ....................................................5, 15, 16, 17

*W. Pennsylvania Elec. Employees Pension Trust v. Plexus Corp.*,
    No. 07 C 0582, 2009 WL 604276 (E.D. Wis. Mar. 6, 2009)...................................10

*Zerger v. Midway Games, Inc.*,
    No. 07 C 3797, 2009 WL 3380653 (N.D. Ill. Oct. 19, 2009) ..................................18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §78u-4(b)(1)(B) ...................................................................................4, 16

15 U.S.C. § 78u-5(c)(1) ...........................................................................................12

17 C.F. R. § 240.10b-5 ..............................................................................................8

Fed. R. Civ. P. 9(b) ....................................................................................................4

Fed. R. Civ. P. 11 .......................................................................................................6

Defendants Allscripts-Misys Healthcare Solutions, Inc. ("Allscripts"), Glen E. Tullman, and William J. Davis ("Individual Defendants") (collectively, "Defendants") respectfully submit this reply memorandum in support of Defendants' Motion to Dismiss the Amended Complaint.

## INTRODUCTION

Distilled to its essence, this is a case about financial projections.  In February 2008, Allscripts announced full fiscal 2007 revenues that were 1.4% lower than it had projected in November 2007 and 6.4% lower than it had projected in May and August 2007.  These lower than previously projected results, according to Plaintiffs, were due to reasons that Allscripts had consistently warned could come to pass — specifically, difficulties associated with the implementation of its new software product, TouchWorks Version 11 ("V-11".)  Based on these weak predicates, Plaintiffs nonetheless claim that Defendants were trying to defraud Allscripts' shareholders.

Congress enacted the Private Securities Litigation Reform Act of 1995 ("Reform Act") to prevent claims like this from proceeding.  And Plaintiffs' Memorandum of Law In Opposition ("Opp.") confirms that the Amended Complaint does not comply with the Reform Act's demanding requirements in a number of respects.

*First*, Plaintiffs attempt to create an illusion of particularity by purporting to describe various meetings and internal documents concerning V-11.  But because such allegations are necessarily based on "information and belief," Plaintiffs must plead sufficient information about their confidential sources to establish the probability that those sources are in a position to know of the matters attributed to them.  Plaintiffs have not done so.

*Second*, each of the challenged forward-looking statements was accompanied by meaningful cautionary language and is, therefore, protected by the statutory Safe Harbor provisions of the Reform Act.  Although Plaintiffs attempt to downplay this language as

1

"boilerplate," and try to defer the matter past the pleading stage, Defendants are entitled to the statutory protections enacted by Congress, particularly given that under Plaintiffs' own theory, the risk factors identified by Allscripts precisely anticipated what transpired.

*Third*, Plaintiffs have entirely failed to plead any strong inference of *scienter*. Plaintiffs attempt to dismiss as "irrelevant" their failure to allege any plausible motive for the purported scheme. (Opp. at 30.) This ignores settled Seventh Circuit law holding that the failure to provide such allegations undermines the necessary "cogent and compelling" inference of fraud under *Tellabs*. *See Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008). Nor do Plaintiffs' allegations regarding the Individual Defendants' purported "knowledge" of problems with V-11 establish a "cogent and compelling" inference of *scienter*. To the extent that these allegations are based upon anonymous sources, they cannot create a strong inference of *scienter*. Moreover, nothing in the allegations demonstrate that Defendants had reason to believe that their public statements were inaccurate.

For all of the reasons discussed below and in Defendants' Memorandum of Law ("Mem."), the Amended Complaint should be dismissed.

## **BACKGROUND**

Plaintiffs assert that Defendants' arguments depend upon a "piecemeal review of the Complaint" and "wholesale disregard of the detailed allegations within it." (Opp. at 1.) But it is Plaintiffs, not Defendants, who ignore or misstate the allegations in the Amended Complaint and the document referenced in it. While Defendants need not identify each such instance, several need to be addressed:

*First*, Plaintiffs overstate the role of Allscripts' TouchWorks EHR products to the overall financial results of Allscripts. According to Plaintiffs, "[b]etween 2004 and 2006, [Allscripts'] net income quadrupled due to the market's embrace" of TouchWorks Version 10.1.1. (Opp. at

1.)  In fact, while Allscripts' TouchWorks products were successful, much of the increase in Allscripts' revenue and net income over this period was due to its acquisition in March 2006 of another software company, A4, which marketed Healthmatics EHR software to small to mid-sized physician groups.  (*See, e.g.,* Ex. 1 at 37 ("Software and related services revenue for the year . . . 2006 increased 166.2% or $108,337[,000] . . . Of the increase, a total of $78,444[,000] is attributed to revenue generated by A4 since the March 2, 2006 acquisition.")

*Second*, Plaintiffs repeatedly assert that Allscripts "did not run a 'testing program' on V-11 before the general release of the software" to ensure that any instabilities and problems were remedied.  (*See* Opp. at 4, 17, 31.)  But that conclusory assertion is without substance, and entirely ignores Allscripts' development of V-11 in conjunction with George Washington University Medical Faculty Associates ("GW MFA").  GW MFA is the largest multi-specialty group in Washington, D.C., with more than 300 physicians in forty-one medical specialties serving over 450,000 patients each year.  (*See* Mem. at 5; Ex. 5 at 3; Ex. 7 at 2.)  Allscripts gave GW MFA the final sign off on V-11, and GW MFA reviewed, tested, and documented close to 100 processes before V-11 was placed into general release, employing a process that gathered extensive feedback from hundreds of physician users.  (*See* Mem. at 4-5; Ex. 5 at 3; Ex. 7 at 1.)  Indeed, in May 2007, GW MFA publicly praised V-11 as "truly a revolutionary breakthrough in Electronic Health Record design and functionality."  (Ex. 7 at 1.)  Moreover, Allscripts placed V-11 into controlled release (*i.e.*, a product-testing phase) into an additional 15 to 20 client sites. (Am. Compl. ¶ 28; Ex. 5 at 21.)

*Third*, Plaintiffs repeatedly argue that V-11 "jeopardized patient safety" and further assert that problems were left unresolved after V-11 was launched in May 2007.  (*See* Opp. at pp. 4, 16-17, 31.)  But these arguments are also without substance — Plaintiffs plead no basis for their

claim with respect to patient safety.  Moreover, their own allegations state that Allscripts' quality assurance and development teams held *daily* meetings to prioritize bugs as critical, major, and minor, and that those teams promptly fixed critical bugs, "usually within one week of identification" and remedied others with service packs, fixes, and design changes.  (Am. Compl. ¶ 70.)

*Fourth*, Plaintiffs repeatedly argue that Defendants "admitted" that, in early November 2007, Defendants knew that their guidance for the balance of 2007 was false.  (*See* Opp. at pp. 9-10, 21.)  Plaintiffs are simply wrong.  Their erroneous contention is drawn entirely from an exchange in a February 2008 conference call (Ex. 4 at 15) and plainly ignores the question posed:  "I was wondering . . . what really changed in Q4 *between the time you gave guidance* [in November 2007] *and it actually transpired*."  (*Id.*)  Plaintiffs likewise ignore Mr. Davis's response:  "[T]here was an impact further [] *beyond what even we expected*, kind of in early November, relative to the V-11 expansion. . ."  (*Id.*)  This Court cannot allow Plaintiffs' rhetoric to fill in the plain defects in the Plaintiffs' pleading.

## ARGUMENT

I.   **PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT DEFENDANTS MADE ANY FALSE STATEMENTS.**

To state a claim for securities fraud, Plaintiffs must allege, with particularity, the specific statements at issue and the reasons why those statements are purportedly false and misleading.  *See* Fed. R. Civ. P. 9(b); 15 U.S.C. §78u-4(b)(1)(B).  Plaintiffs assert that "the Complaint meets in every respect" these heightened pleading standards.  (Opp. at 11.)  Plaintiffs are wrong.

**A.   The Amended Complaint Is Premised On Information And Belief, But Does Not Identify The Basis On Which Those Beliefs Are Formed.**

Plaintiffs do not dispute that their allegations are based on information and belief.  Nor could they — Plaintiffs were not present at the various meetings nor privy to the internal

4

corporate information that the Amended Complaint purports to describe.  Nor do Plaintiffs

dispute that they have relied upon confidential sources for their purported allegations.

Under these circumstances, courts have consistently held that Plaintiffs must, at a

minimum, plead sufficient information about their sources to support "the probability that a

person in the position occupied by the source would possess the information alleged." *Makor*

*Issues v. Tellabs*, 437 F.3d 588, 596 (7th Cir. 2006) ("*Tellabs I*"), *rev'd on other grounds*, 551

U.S. 308 ("*Tellabs II*") (*quoting Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000))*; California*

*Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004).  "If the

descriptions indicate that the sources would not have access to, or knowledge of, the facts

underlying the allegations, the allegations would be insufficient."  *Tellabs I*, 437 F.3d at 596*; see*

*also In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2006 WL 999988, *3-4 (N.D. Ill. Mar.

28, 2006); *Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823, 831 (N.D. Ill. 2006) (confidential witnesses

lack reliability because "unclear how they learned of the information"); *Clark v. Comcast Corp.*,

582 F. Supp. 2d 692, 704-706 (E.D. Pa. 2008).

Plaintiffs profess to be "mindful" of this authority, but they claim that it does not apply to

them because their Complaint omits to attribute the information to any source whatsoever.  (Opp.

22, n. 9.)  That position cannot be squared with the plain text of the Reform Act, the cases

discussed above, or common sense.  Not surprisingly, none of the cases cited by Plaintiffs (at

Opp. 22-23) stand for the proposition that plaintiffs may avoid pleading the basis for their

"information and belief" allegations by failing to disclose any information as to the sources of

the information.[1]  In fact, none of these cases call into question or even address the cases

---

[1] The cases Plaintiffs cite in the text address the extent to which plaintiffs must plead every fact that
supports their information and belief allegations, but do not address the situation presented here, where
information is based on confidential sources but no facts at all are pleaded as to that source. *See ABC
Arbitrage v. Tchuruk*, 291 F.3d 336, 358 (5th Cir. 2002); *Adams v. Kinder-Morgan Inc.*, 340 F.3d 1083,

5

discussed in Defendants' Memorandum requiring that Plaintiffs provide factual detail concerning

their confidential sources. Moreover, the one that expressly deals with the issue of confidential

sources supports Defendants, not Plaintiffs. *See ABC Arbitrage Plf's Group v. Tchuruk*, 291

F.3d 336, 352 (5th Cir. 2002) (cited at Opp. 22) (applying *Novak*).

Nor can Plaintiffs avoid this requirement by reference to counsel's obligations under Rule

11, as Plaintiffs suggest. (Opp. 24, n. 14.) That is because the issue is not *Plaintiffs'* belief that

their claims are not frivolous and grounded in fact. Rather, the requirement goes to the heart of

what *courts* must do under the Reform Act. As the Seventh Circuit has explained, given the

detailed analysis that courts must undertake under the heightened pleading standards that

Congress has imposed under the Reform Act, omissions of the sort at issue here serve to

"conceal[] information that is essential" and therefore thwarts the Court's required review.

*Higginbotham v. Baxter, Intern.,* 495 F.3d 753, 757 (7th Cir. 2007); *see also Teachers*

*Retirement System of Louisiana v. Hunter*, 477 F.3d 162, 174 (4th Cir. 2007) ("[d]etermining

whether the complaint satisfies [the Reform Act's pleading] standard necessarily entails a case-

by-case assessment of the complaint as a whole," which includes consideration of, *inter alia*,

"whether sources of the facts are disclosed and the apparent reliability of those sources"); *Chubb*

*Corp.*, 394 F.3d at 147 (Reform Act requires "an examination of the detail provided by the

confidential sources, the sources' basis of knowledge, the reliability of the sources, the

---

1103 (10th Cir. 2003); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72-73 (2d Cir. 2001); *In re Cephalon Sec. Litig.*, 1997 U.S. Dist. LEXIS 13840, *1 (E.D. Pa. Aug. 29, 1997). The cases cited in Plaintiffs' footnote 10 do not even address the pleading standards for information and belief allegations, and there is no suggestion in those cases that the basis for such allegations in those complaints were confidential sources, as is the case here. *See e.g. Gosselin v. First Trust Advisors LP*, No. 08 C 5213, 2009 U.S. Dist. LEXIS 117737, * 15 (N.D. Ill. Dec. 17, 2009); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2008 U.S. Dist. LEXIS 76804, * 4-5 (N.D. Ill. Sept. 23, 2008); *In re JP Morgan Chase & Co. Sec. Litig.,* No. 06 C 4674, 2007 U.S. Dist. LEXIS 93877, *11 (N.D. Ill. Dec. 17, 2007); *Desai v. Gen. Growth Props.*, 654 F. Supp. 2d 836 (N.D. Ill. 2009); *In re Ulta Salon, Cosmetics & Fragrance, Inc.*, 604 F. Supp. 2d 1188 (N.D. Ill. 2009).

corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.").

Here, Plaintiffs' failure is no mere technicality.  For instance, as discussed below, Plaintiffs concede that many of the statements they challenge fall within the Reform Act's Safe Harbor.  Yet they argue that the detailed risk factors that accompanied those statements were boilerplate because they allege Defendants "knew" that V-11 was plagued by serious problems at the time of those statements.  (Opp. at 26.)  Those allegations, in turn, are based entirely on the purported information provided by some unidentified source.  (Am. Compl. ¶¶ 67-69.) Likewise, Plaintiffs admit that the existence of "bugs" in new computer software would not be sufficient to plead a "strong inference" of *scienter*, but seek such an inference because they allege the "bugs" were grave and jeopardized patient safety.  Here again, this allegation – which defies common sense and is belied by the use of TouchWorks V-11 at GW MFA and other Allscripts' clients — is necessarily based upon some unknown and unidentified source.  (Opp. at 32-33.)

Under the circumstances, it is critical to the Court's review to know, at a minimum, (i) whether these allegations come from a source employed by Allscripts during the relevant time; (ii) whether the source actually attended the meetings described or reviewed the purported information from the databases, and if so, which meetings and what information; (iii) what specifically was said at the meetings or in the databases; (iv) whether that person would be in a position to know and understand the nature of the technical matters at issue.  Thus, for instance, in *Chubb*, the court discounted allegations where plaintiffs failed to plead precisely when any of the confidential sources had been employed by the defendant.  *Chubb Corp.*, 394 F.3d at 146-48. The court also discounted information provided by sources who would not have been in a

7

position to know the information attributed to them.   *Id.* at 148.  Plaintiffs' deliberate omission

of any of this information is an independent basis for dismissal.   *Id.*; *see also Davis*, 431 F.

Supp. 2d at 831; *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 839-40 (N.D. Cal. 2000);

*Clark*, 582 F. Supp. 2d at 692.

### B.  Generalized Statements Of Optimism And Puffery Are Immaterial As A Matter of Law.

Plaintiffs next suggest that the Court cannot resolve on a motion to dismiss whether the

generalized optimistic and puffing statements set forth in the Amended Complaint (*see* ¶¶ 24, 26,

34, 45, 47) are actionable.  (Opp. at 12.)  To the contrary, as Plaintiffs' own cases demonstrate,

courts consistently and routinely dismiss securities claims based on puffery.  *See, e.g., Tellabs I,*

437 F.3d at 596-97 *(cited* in Opp. at 12, 15); *see also In re Midway Games, Inc. Sec. Litig.*, 332

F. Supp. 2d 1152, 1164 (N.D. Ill. 2004) ("[P]laintiffs' argument ignores several appellate

decisions affirming dismissal at the pleadings stage . . ."); *Anderson v. Abbott Labs.*, 140 F.

Supp. 2d 894, 905 (N.D. Ill. 2001), *aff'd*, 269 F.3d 806, 811 (7th Cir. 2001); *Raab v. General*

*Physics Corp.*, 4 F.3d 286, 289-90 (4th Cir. 1993).

Plaintiffs likewise err in suggesting that the generalized optimistic statements and puffery

challenged here are actionable because they purportedly "imbued confidence" that Defendants

could meet the financial projections.  (Opp. at 13.)  That is not the law.  Rule 10b-5 prohibits the

making of "any untrue statement of a material *fact*" or the omission of a "material *fact*"

necessary under the circumstances to make the statement not misleading.  17 C.F. R. § 240.10b-5

(emphasis added).  Accordingly, in the context of vague optimistic statements and puffery, the

issue is whether, under the circumstances, a reasonable investor would rely on such statements as

"reflecting a consequential fact about the company."  *Tellabs I*, 437 F.3d at 596.  Statements that

merely amount to "vague aspiration or unspecific puffery" are not actionable precisely because a

reasonable investor would not view them as conveying information about specific facts. *Id.*;

*Raab*, 4 F.3d at 290 ("The whole discussion of growth is plainly by way of loose prediction, and

. . . anything but definite.").  And in this regard, as Plaintiffs acknowledge, to the extent that

these statements do reference specific facts, such as Allscripts' historical sales growth, Plaintiffs

do not challenge the accuracy of those facts.  (*See* Opp. at 13, n.7) ("Plaintiffs do not claim that

Allscripts' sales did not grow at the level reported."); *see also Abbott Labs.,* 269 F.3d at 811

("As for White's statements . . . he said very little that was concrete (as opposed to puffery), and

everything concrete was true. . .").

Thus, in *Tellabs I*, the Seventh Circuit dismissed a number of statements as inactionable

puffery that are very similar to those at issue here.  *Compare, e.g.,* Am. Compl. ¶ 24

("performance give[]s us confidence in our ability to deliver during the remainder of 2007"); *id.*

¶ 26 (V-11 will "provide physicians with a product they want to use and need to have"); *id.* ¶ 34

("[w]e have a clear vision . . . and we continue to demonstrate our ability to deliver on that

vision"); *id.* ("we are in a position to capitalize on the significant market opportunity during the

second half of the year"); *id.* ¶ 45 (growth in sales confirms "acceleration in the market and

Allscripts' continuing leadership") *with Tellabs I*, 437 F.3d at 597 ("we feel very, very good

about the robust growth we're experiencing," and "demand for our core optical products . . .

remains strong" was inactionable puffery); *compare also* Am. Compl. ¶ 26 (market validation

has been "overwhelming"); ¶47 (new clients reinforce "our position as the number one

provider") *with Tellabs I*, 437 F.3d at 597-98 ("[o]n the 6500, demand for that product is

exceeding our expectations" was inactionable puffery).  The same result is required here. [2]

---

[2]  None of the cases that Plaintiffs cite are to the contrary.  (*See* Opp. at 14-15.)  Those cases did not deal
with generalized opinions or optimism about uncertain events, but with specific opinions expressly
premised on concrete facts adequately alleged to be false.  *See e.g., In re Westell Techs., Inc. Sec. Litig.*,
No. 00 C 6735, 2001 U.S. Dist. Lexis 17867, * 7 (N.D. Ill. Oct. 30, 2001) ("massive demand' from

**C.      The Challenged Forward-Looking Statements Are Protected By The Reform Act's Safe Harbor.**

Plaintiffs concede that Allscripts' forward-looking projections of sales, revenue, and earnings or predictions about the deployment of V-11 fall within the Safe Harbor protections of the Reform Act.  They offer three arguments, however, why the cautionary language that accompanied those statements was purportedly not sufficiently "meaningful."  None of these arguments has merit.

*First*, Plaintiffs argue that the question of whether cautionary statements are sufficiently "meaningful" cannot be resolved on a motion to dismiss.  But Plaintiffs make no effort to distinguish the many cases that hold that where, as here, the risks that have been disclosed precisely anticipate the harm that plaintiffs claim was realized, the case can and should be dismissed.  *See, e.g., Desai v. General Growth Properties*, 654 F. Supp. 2d  836, 846 (N.D. Ill. Sept. 17, 2009); *W. Pennsylvania Elec. Employees Pension Trust v. Plexus Corp.*, No. 07 C 0582, 2009 WL 604276, * 8 (E.D. Wis. Mar. 6, 2009); *In re XM Satellite Radio Holding Sec. Litig.*, 479 F. Supp. 2d 165, 185 (D.D.C. 2007); *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 893 (D. Minn. 2007).  Indeed, this Court has previously dismissed claims based upon the Safe Harbor protections on a motion to dismiss.  *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833 (N.D. Ill. 2003) (Castillo, J.) (dismissing securities claims based on financial projections).

*Second*, Plaintiffs ague that Allscripts' risk factors were not sufficiently specific.  But Plaintiffs ignore the specific language of the risk factors and notably do not even quote them in

---

largest account," actionable where largest account had vastly curtailed orders); *In re Lattice Semiconductor Corp. Sec. Litig.*, No. CV04-1255-AA, 2006 U.S. Dist. LEXIS 262, at * 16 (D. Or. Jan. 3, 2006) ("revenues grew nicely," actionable where contemporaneous conditions were otherwise); *In re World Access Sec. Litig.*, 119 F. Supp. 2d 1348, 1354-55 (N.D. Ga. 2000) ("tests results . . . have been quite encouraging," actionable where product was "a non-functional, incomplete proto-type"); *Lindelow v. Hill*, No. 00 C 3727, 2001 U.S. Dist. Lexis. 10301, * 6 (N.D. Ill. Jul. 20, 2001) ("We are very excited about, and are getting ready for, our controlled market launch of OneMedPlace.com" actionable where that system did not exist).

their Opposition.  Allscripts specifically warned that its projections might vary if its products

suffered "undetected errors or similar problems" and caused "elongated deployment and sales

cycles." (Am. Compl. ¶ 85; 2006 10-K at 26.)  In fact, Allscripts identified the very harm that

Plaintiffs claim caused the modest shortfall against the earlier projections:  "errors in our

software could result in . . . lost sales; delays in commercial release; . . . delays in or loss of

market acceptance of our solutions; . . . unexpected expenses and diversion of resources to

remedy errors." (*Id.*); *see generally Desai,* 654 F. Supp.2d at 846 (where company "identified the

exact risks that have been identified in Plaintiffs' Complaint… call[ing] those statements

'boilerplate' borders on the farcical.").  The detail in Allscripts' risk factors was far greater than

the language at issue in *Tellabs* and *Asher*, which involved vague and generalized risks different

from those alleged to have materialized.  *See Tellabs I*, 437 F.3d at 599*; Asher v. Baxter Intern.*,

377 F.3d 727, 730 (7th Cir. 2004).

 *Third*, and finally, Plaintiffs confusingly argue that Allscripts' risk factors were not

"meaningful" because — they claim — Allscripts was already realizing certain of the risks that it

identified.  As an initial matter, Plaintiffs have not adequately alleged that Defendants "knew"

that issues with V-11 would result in Allscripts missing the earnings and revenue guidance.

Instead, as discussed below, (pp. 17-20, *infra*), the well-pleaded facts do not support the

allegation that Defendants had "actual knowledge" that their forecasts or other forward-looking

statements could not be realized.  (*See* II.B, *infra*).

 Moreover, this argument is not supported by the text of the Safe Harbor or the cases

Plaintiffs cite.  Plaintiffs appear to have confused the different prongs of the Safe Harbor.  The

Safe Harbor provides two separate and independent basis for dismissal — (i) where a forward-

looking statement is accompanied by meaningful cautionary language or (ii) if the forward-

looking statement was not made with "actual knowledge" of its falsity.  15 U.S.C. § 78u-5(c)(1); (2).  As courts have repeatedly held, where a statement is accompanied by "meaningful" cautionary language, the Safe Harbor is to be applied without regard to the state of mind of the speaker.  *See Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, -- F.3d --, 2010 WL 154519, * 9-10 (11th Cir. Jan. 19, 2010); *see also Miller v. Champion Enters. Inc.*, 346 F.3d 660, 672 (6th Cir. 2003); *Desai*, 654 F. Supp.2d at 843; *In re Midway Games, Inc. Secs. Litig.*, 332 F. Supp.2d 1152, 1168 (N.D. Ill. 2004).  Not surprisingly, Plaintiffs' authority either did not involve the Safe Harbor at all, *see Huddleston v. Herman & MacLean*, 640 F.2d 534, 544 (5th Cir. 1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375 (1983); *In re Next Level Sys. Sec. Litig.*, No. 97 C 7362, 1999 U.S. Dist. LEXIS 5653, at *20 (N.D. Ill. Mar. 31, 1999), affirmed dismissal, *Rombach v. Chang*, 355 F.3d 164,173 (2d Cir. 2004), or actually support Defendants' position.  *See e.g., In FirstEnergy Corp. Sec. Litig.*, 316 F. Supp.2d 581 (N.D. Ohio 2004) (Opp. at 26).[3]

### D.  Plaintiffs Have Not Adequately Pleaded The Falsity Of The Challenged Present-Tense Statements About V-11.

The heightened pleading requirements of the Reform Act require Plaintiffs to "specify *each* statement alleged to have been misleading" along with "the reason or reasons why the statement is misleading."  *See Stavros*, 266 F. Supp. at 841.  Notwithstanding their claims to the contrary, the Amended Complaint does not sufficiently allege that any of the challenged present-tense statements were false and misleading when made.

---

[3]  The issue in *FirstEnergy* was defendants' alleged failure to disclose the consequences of their failure to repair and maintain the company's nuclear power plants.  The court held that the cautionary language, which simply identified a risk relating to "regulatory approvals," was "general and fails to disclose the 'actual risks' known by the Company," 316 F. Supp.2d at 596, and contrasted that with *In re Kindred Healthcare, Inc. Sec. Litig.*, 299 F. Supp. 2d 724, 739 (W.D. Ky. 2004), in which the cautionary language had "specifically admonish[ed] about the 'actual risk' the defendant company" faced.  316 F. Supp. 2d at 596.

*First,* Plaintiffs do not contest that "V-11 was the most tested product in [Allscripts']

history." (Opp. at 17.)  Nor could they.  Both the Amended Complaint and the documents

incorporated therein demonstrate that GW MFA and 15-20 clients conducted numerous

performance tests on V-11 before the program was launched into general release at its first

national site, the GW MFA.  (*See supra* at pp. 3; Mem. at pp. 11, 23-24.)  Instead, Plaintiffs

essentially ask the Court to rewrite the statement and turn it into something that it was not – *i.e.*,

a guarantee that there would not be "any surprises with the functionality or implementation of

the software." (Opp. at 17.)  Plaintiffs cannot misconstrue Defendants' statement in order to

challenge it.  *See, e.g., ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan

Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (statement that JPMAC had "risk management

processes [that] are highly disciplined . . . did not, and could not, amount to a guarantee that its

choices would prevent failures in its risk management practices".) [4]  And to the extent that

Plaintiffs seek to challenge the statement as a forward-looking statement of "expectations," it is

protected by the Reform Act's Safe Harbor.  *See supra* pp. 10-12.  The same is also true of the

statement that "we don't expect issues to come up relative to the actual installation" of V-11 (*see*

Opp. at 17-18), which is plainly a forward-looking statement, not a statement of present fact. [5]

---

[4] Plaintiffs' reliance on *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 991 (W.D. Wis. 2003) is
misplaced.  There, the court held that historical sales and income figures, though literally not false, were
actionable because they concealed the role that accounting gimmicks had played in artificially inflating
those figures. *Id.*  The court did not reinterpret historical statements into forward-looking guarantees, as
Plaintiffs attempt to do here.  *Id.*

[5] Plaintiffs also contend that Defendants mischaracterize Mr. Davis's response to a question in May 2007
about the brief delay in launching V-11.  (Opp. at 18-19.)  What Plaintiffs fail to indicate is that Allscripts
had delayed launching V-11 for four to six weeks *at GW MFA*, its first national site.  (*See* Ex. 5; Ex 7 at
1.)  Plaintiffs do not contest that design work at GW MFA caused the four to six week delay (*see* Opp. at
19) and for that reason this statement is not properly alleged to be false.  Rather, Plaintiffs confusingly
and repeatedly conflate this brief delay *at GW MFA* in May 2007 with Allscripts' earlier decision in 2006
to postpone the launch of V-11.  (*See* Opp. at 3, 4, 18, 19.)

*Second,* Plaintiffs contend that implementation times were not "roughly consistent with the past" *as of August 2007.* (Opp. at 19.) Plaintiffs claim that Defendants "admitted" at the end of the Class Period that implementation times were longer than Allscripts' past experience, and "admitted" that the complexity of the implementation process required additional personnel. (Opp. 19-20.) Here again, Plaintiffs simply mischaracterize what Defendants said. Defendants never "admitted" that they "knew" in August 2007 that implementation times would not be consistent with past experience; rather, in February 2008 Defendants explained that variations in implementation times had arisen across the 30 or so clients at which V-11 had been implemented based on the unique characteristics of each client and the nature of the implementation and, therefore, Allscripts didn't "quite yet have an average." (Am. Compl. ¶ 54.)

*Third,* as Defendants previously demonstrated (Mem. at 25), Plaintiffs have not pleaded that Mr. Tullman's August 2007 statement about activating customers in the second quarter was false or misleading when made. Plaintiffs offer no basis to contradict that the rollout had proceeded well during the second quarter or that a few thousand users were expected by the end of August. (*See id.* at pp. 4-7.) Instead, Plaintiffs attempt to infer falsity from a subsequent dispute between Allscripts and a single client, Tennessee Oncology ("TN Oncology"), regarding a long-term development agreement involving an EHR system that combined various aspects of TouchWorks EHR (not only V-11) with an oncology-specific software solution. (*See* Am. Compl., Ex. 1 ¶ 19.)[6] As Defendants previously explained, Plaintiffs' attempt to generalize the unique TN Oncology situation as indicative of widespread problems is not warranted. (*See* Mem. at 33 (citing cases).) Moreover, the entire predicate for alleged "problems" at TN

---

[6] In addition, Plaintiffs have mischaracterized and overstated key aspects of the TN Oncology contract. Allscripts' contract with TN Oncology was entered into in 2005, long before V-11 was released into the market. (*See* Opp. at pp. 20-21; Am. Compl. ¶¶ 27, 28, 36).)

Oncology comes from allegations in a complaint filed by TN Oncology, which should not be credited.  *See Geinko v. Padda*, No. 00 C 5070, 2002 WL 276236, * 6 (N.D. Ill. Feb. 27, 2002) (granting dismissal, disregarding hearsay allegations copied from other complaints); *Caiafa v. Sea Containers Ltd.,* 525 F. Supp. 2d 398, 411 (S.D.N.Y. 2007) ("[A]llegations . . . contained in pleadings from an unrelated lawsuit . . . are inadmissible."). Finally, both the Amended Complaint and the TN Oncology complaint allege only that Allscripts was notified of "problems" in September 11, 2007 — after Mr. Tullman's August 2007 statement.  (*See* Am. Compl. at ¶ 74, Ex. 1 at ¶ 34.)[7]

*Finally*, Plaintiffs' argue that, during a February 2008 conference call, Defendants "admitted" that they knew, in early November 2007, that their guidance was overstated.  (*See* Opp. at 21.)  As noted above, however, Plaintiffs' contention is based on a plain misreading of a question and response.  (*See supra* at 4.)

## II.    PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO A STRONG INFERENCE OF *SCIENTER*.

As Defendants previously demonstrated, Plaintiffs' allegations do not come close to pleading a "cogent and compelling" inference that Defendants acted with *scienter*.  (Mem. 26-34.)  Because this is a separate and independent basis for dismissal, Plaintiffs' failure to adequately allege *scienter* requires dismissal of the Amended Complaint.  *See Tellabs v. Makor Issues*, 551 U.S. 308, 313  (2007) ("*Tellabs II*") (*citing* § 78u-4(b)(2)).

In response, Plaintiffs argue that they are not required to provide allegations of motive, and offer implausible speculations as to why Defendants would have intentionally misled

---

[7]  Plaintiffs argue that it would be "implausible" to assume that Defendants first learned of the issues with TN Oncology in September 2007.  (Opp. at 20.)  But the Complaint is silent on this point, and Plaintiffs do *not* allege that issues at TN Oncology had been raised prior to September 11, 2007.  That omission is telling.  *See Konkol v. Diebold*, 590 F.3d 390, 398 (6th Cir. 2009) (discounting allegations given information from confidential sources because "one would reasonably expect those witnesses to be able to provide more details …[and] connect them to the Defendants.").

shareholders.  Plaintiffs also assert that it would be "utterly implausible" for Defendants to have been unaware of problems with the development and implementation of V-11, and claim that Allscripts' experience with one of its customers, TN Oncology, establishes fraudulent intent. None of these arguments has merit.

Notably, Plaintiffs' discussion of *scienter* does not even mention, much less distinguish, the post-*Tellabs II* authority regarding reliance on confidential sources in pleading *scienter*.  As the Seventh Circuit has explained, "[t]o determine whether a 'strong' inference of *scienter* has been established, the judiciary must evaluate what the complaint reveals and disregard what it conceals."  *Higginbotham*, 495 F.3d at 757.  Because anonymity omits information that is "essential to the sort of evaluation required by *Tellabs*," allegations based on anonymous confidential witnesses are to be discounted and "[u]sually that discount will be steep."  495 F.3d at 757.  Here, Plaintiffs provide no detail at all about their sources.  As such, Plaintiffs' allegations of *scienter* should be subject to the steep discount applied to undisclosed sources. *See also Konkol*,  590 F.3d at 399 ("Even less weight should be given to the Confidential Witnesses' allegations due to the lack of information about them;" noting failure to allege "dates of employment, job description, employment location or sector, or which of the Defendants interacted with them."); *compare Tellabs III*, 513 F.3d at 713 (noting *Higginbotham*, and considering allegations from confidential sources only where, unlike here, plaintiffs provided descriptions of their jobs sufficient to establish "first hand" knowledge).

### A.      Plaintiffs Do Not Allege A Motive To Commit Fraud.

Plaintiffs concede that neither Messrs. Tullman nor Davis sold a single share of Allscripts' stock during the putative Class Period.  Nevertheless, Plaintiffs offer a series of fanciful and speculative reasons why Defendants would not have sold stock, including, *inter alia*, attempting to avoid attention, to forestall a lawsuit like this one, or for "tax planning reasons."

(Opp. at 30.)  But Plaintiffs offer no factual support for such rank conjecture, and the Amended Complaint pleads none.  Nor is there any merit to their suggestion that Defendants were motivated to commit fraud because they wanted to falsely persuade the market that V-11 was an improvement over its predecessor.  (*Id.*)  Courts have long held that an officer or director's desire to see the company succeed is too general to establish a "strong inference" of *scienter*.  *See e.g. Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.*, 537 F.3d 527, 544 (5th Cir. 2008) ("*Scienter* in a particular cases may not be footed solely on motives universal to corporate executives.").

To be sure, the Supreme Court has held that Plaintiffs are not absolutely required to plead motive to establish *scienter*, *Tellabs*, 551 U.S. at 325.  But Plaintiffs' argument that their failure to do so is "irrelevant" (Opp. at 30) misunderstands the post-*Tellabs II* caselaw in the Seventh Circuit.  As both *Higginbotham* and *Pugh* squarely hold, under the *Tellabs II* inquiry, it is exceedingly difficult to find the required strong inference of *scienter* where there are no stock sales by those supposedly "in the know."  *Higginbotham*, 495 F.3d at 759; *see also Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008) ("[T]he fact that the defendants are not alleged to have sold the stock at the inflated prices meant that they stood to lose a lot of money if the value of Tribune's stock fell.").  So too here.  Plaintiffs' failure to allege any motive for the purported "scheme" means that their proffered inference of *scienter* is neither cogent nor compelling; it is nonsensical.  Defendants have been engaged for many years in building Allscripts for its shareholders; there is no basis pleaded to infer that they suddenly were trying to defraud those very shareholders.

17

**B.     Plaintiffs Do Not Allege A Cogent Or Compelling Inference That The Defendants Acted With *Scienter*.**

Plaintiffs do not dispute that "bugs" are common to new software, and concede that the mere fact that V-11, which added two million lines of new code to its predecessor, had "bugs" would be insufficient to create a strong inference of *scienter*.  Nevertheless, Plaintiffs make the inflammatory and unsupported accusation that those bugs "were causing critical errors that put patient safety at risk and caused the software to not work at all, *and those issues persisted throughout the Class Period*."  (Opp. at 31) (emphasis added.)  Plaintiffs do not provide a citation to the Amended Complaint for this assertion — and the Amended Complaint contains no such allegation.  To the contrary, as previously discussed, a review of the Amended Complaint reveals that there are no allegations that Messrs. Tullman or Davis were told or learned that the issues that arose in 2006 still existed at the time the software was put into general release in May 2007, or that any remaining "bugs" were so serious and insurmountable as to make their public statements during the Class Period false and misleading.  (Mem. at 30-31).

Plaintiffs argue that given their positions and the importance of V-11 to Allscripts, "it is incredible to suggest that defendants did not know of, or were unaware, of the significant problems with its product."  (Opp. at 32.)  This appears to be an effort to invoke the so-called "core products" presumption that some courts have used to infer that an executive was knowledgeable about problems with an important product.  (*See, e.g.*, Opp. 32, n. 21) (*citing* cases).  But such a presumption necessarily assumes the existence of the underlying problems that the executives are "presumed" to know.  *See Zerger v. Midway Games, Inc.*, No. 07 C 3797, 2009 WL 3380653, *10 (N.D. Ill. Oct. 19, 2009) ("Even assuming *arguendo* that [the core operations] theory is viable in this circuit, it speaks only to the question of *who* can be credited with knowledge …; it leaves open the question of *when* anybody knew anything.") (emphasis in

18

original).  For instance, in *Tellabs III*, the plaintiffs provided detailed allegations, corroborated by multiple confidential sources as to whom facts were pleaded that demonstrated they were in a position to know such information firsthand, that demand for the company's core products had fallen dramatically.  *See Makor Issues v. Tellabs*, 513 F.3d 702 (7th Cir. 2008) ("*Tellabs III*").  Under such circumstances, the issue was not whether the plaintiffs had pleaded the existence of facts that were at variance with the public statements, but rather, whether the company's CEO was aware of such facts when he made the statements.  *Id.* at 709.

That is simply not the situation here.  Instead, as set forth above, there are no sufficient allegations in the Amended Complaint to support a claim that any of the "bugs" were so serious and significant that they called Allscripts' guidance and other statements into question.  In this regard, Plaintiffs assert that Defendants had "access" to information about known bugs, and that a direct report of Mr. Tullman, Laurie McGraw, attended "daily meetings with the development and quality assurance teams where they discussed the bugs being worked on and which of those bugs were 'critical' and need to be immediately fixed."  (Opp. at 33.)  But the Amended Complaint does *not* allege that these quality assurance processes were not working, or that the bugs that were identified as "critical" were not being promptly identified and fixed.  In fact, the Amended Complaint affirmatively alleges that "bugs" were being identified and promptly fixed.  (*See* Am. Compl. ¶ 70 (alleging that Allscripts employed quality-assurance and development teams who held *daily* one process meetings to prioritize bugs as critical, major, and minor and which promptly fixed critical bugs, "*usually within one week of identification*" and remedied the other bugs with service packs, bug fixes, and design changes) (emphasis added).)  The mere existence of bugs, along with a functioning process to resolve them, clearly does not create a "cogent and compelling" inference of fraud.

Finally, Plaintiffs point again to the situation with a single customer: TN Oncology.  As noted above, however, Plaintiffs have mischaracterized the nature of the development agreement with TN Oncology, and their allegations appear to stem entirely from the allegations in the TN Oncology complaint, which are not properly credited.  (*See* pp. 14-15, *supra*.)  Such allegations do not give rise to a strong inference of *scienter* (*see* cases cited Mem. at 33) and there is no allegation that the statements made after receiving the September 11, 2007 letter are inconsistent with the situation at TN Oncology.[8]

## **CONCLUSION**

For all of the foregoing reasons, and for the reasons set forth in Defendants' moving brief, the Amended Complaint should be dismissed with prejudice.[9]

Dated:  February 17, 2010

Respectfully submitted,

ALLSCRIPTS-MISYS HEALTHCARE
SOLUTIONS, INC., GLEN E. TULLMAN,
AND WILLIAM J. DAVIS

By: _/s/_James W. Ducayet ___
One of the Attorneys for Defendants

Walter C. Carlson
James W. Ducayet
Victor D. Quintanilla
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

---

[8] Given that the Amended Complaint has not sufficiently plead a strong inference of *scienter* against Messrs. Tullman or Davis, the Amended Complaint cannot establish a strong inference of *scienter* on behalf of Allscripts.  *See Pugh*, 521 F.3d at 697.

[9] As Plaintiffs have failed to offer any proposed amendment to cure the defects in their Amended Complaint, this dismissal should be with prejudice.  *See e.g., Pugh*, 521 F.3d at 698 ("The plaintiffs do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint [is] adequate under the [Reform Act].");  *Stavros*, 266 F. Supp. 2d at 852.

**CERTIFICATE OF SERVICE**

I, James W. Ducayet, an attorney, certify that on February 17, 2010, I electronically filed Defendants' Reply Memorandum Of Law In Support Of Defendants' Motion To Dismiss The Amended Complaint with the Clerk of the Court using the Court's CM-ECF system which will send notification of the filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

__/s/__ James W. Ducayet

# Mailing Information for a Case 1:09-cv-04726

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Walter C. Carlson**
  wcarlson@sidley.com,efilingnotice@sidley.com

- **James Wallace Ducayet**
  jducayet@sidley.com,efilingnotice@sidley.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com

- **Brian O O'Mara**
  briano@lerachlaw.com,smarcks@lerachlaw.com

- **Debra J. Wyman**
  debraw@csgrr.com,nhorstman@csgrr.com,stremblay@csgrr.com,e_file_sd@csgrr.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)